# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| HALE COUNTY A&M TRANSPORT, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:12-cv-00265-DGK |
| CITY OF KANSAS CITY, MISSOURI, | ) |
| Defendant. | ) |

## ORDER GRANTING IN PART PLAINTIFF'S MOTION TO LIMIT EXPERT TESTIMONY

This lawsuit arises from damage sustained by Plaintiff's rental airplane (the "plane") during its landing at Charles B. Wheeler Downtown Airport (the "airport") in Kansas City, Missouri. Following the incident, Plaintiff Hale County A&M Transport, LLC ("Plaintiff" or "Hale") filed suit in this Court against the owner and operator of the airport, Defendant City of Kansas City, Missouri ("Defendant" or the "City"), alleging that its negligence in failing to remove snow and ice from the runway damaged the plane. The City disputes these allegations.

Now before the Court is Hale's Motion to Limit Expert Testimony (Doc. 69) in which it seeks to preclude Defendant's proposed expert, William Turner from testifying about certain subjects at trial. After carefully reviewing the parties' briefing,[1] the motion is GRANTED IN PART and DENIED IN PART for the reasons articulated below.

---

[1] The Court considered Plaintiff's Suggestions in Support (Doc. 69), Defendant's Suggestions in Opposition (Doc. 74), and Plaintiff's Reply (Doc. 75).

## Background

The pertinent facts are as follows.[2] At all times relevant to this lawsuit, Plaintiff owned and operated a transport company based out of Hale County, Texas, and Defendant owned and managed the airport. Prior to the incident, Plaintiff had leased the plane from a third-party, DivLend Equipment Leasing, LLC ("DivLend"). The lease agreement for the plane required Plaintiff to return it in "good operating condition." On February 24, 2011, Plaintiff directed its independent contractor pilot, Tim Hardage ("Mr. Hardage"), to fly several passengers into Kansas City. Jason Wooten ("Mr. Wooten"), Aaron Lee, Sheila Lee, and Christopher Lee were passengers on the plane. Both Mr. Hardage and Mr. Wooten sat in the front seats.

On the evening of the incident, inclement weather caused snow and ice to accumulate on the airport's runways. Three of Defendant's employees, Melissa Cooper ("Ms. Cooper"), Chad Grote, and James Brown worked to remove the snow and ice and communicate the condition of the runways to the air traffic controllers. At one point, Ms. Cooper reported to Operations Agent Greg Koontz ("Mr. Koontz") that there were some snow berms as high as one foot along the sides of the runways. Directly prior to the incident, a pilot flying (the "Cessna Pilot") a Cessna landed at the airport and reported that his plane ran through a snow berm on Runway 3. Ms. Cooper later stated that the snow removal process would have only created snow berms of three to four inches in height on the runway.

Shortly after the Cessna Pilot landed, Defendant's air traffic control employees gave clearance to Mr. Hardage to land the on Runway 3. During the landing process, the plane's right propeller struck some type of object, causing $25,395 in damages. Mr. Hardage and Mr. Wooten testified during their depositions that the propeller struck a snow berm on Runway 3. On

---

[2] The Court considered Plaintiff's Amended Complaint (Doc. 26), the exhibits attached to the parties briefing on this issue (Docs. 69(1)-69(11) & 74(1)-(4)), and the parties' Joint Stipulation of Uncontroverted Facts (Doc. 93).

February 29, 2012, Plaintiff filed suit in this Court alleging five negligence claims under Missouri common law.

What precisely caused the damages is the primary dispute in this litigation. Relying on testimony from the Cessna Pilot, Mr. Hardage, and Mr. Wooten, Plaintiff alleges that a snow berm on Runway 3 caused the damage. Relying primarily on testimony from Ms. Cooper and Mr. Koontz, Defendant contends a snow berm on Runway 3 did not damage the plane, and thus some other object must have caused the damage. Defendant has retained William Turner ("Turner"), a highly experienced pilot, air traffic control manager, and airport management consultant, to provide expert analysis and testimony regarding whether any actions on the part of Defendant's employees caused or contributed to the plane's damage. Following disclosure of Turner's written opinion, Plaintiff filed this motion seeking to prevent Turner from testifying about some of the subjects in his report.

**Standard**

The party seeking admission of expert testimony has the burden of establishing admissibility. *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). To be admissible, expert testimony must be both relevant to a material issue and reliable. *Margolies v. McCleary*, Inc., 447 F.3d 1115, 1120 (8th Cir. 2006). Under Federal Rule of Evidence 702, if specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, so long as (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Finally, "Doubts about whether an expert's testimony will be useful should generally be

resolved in favor of admissibility." *Larabee v. MM&L Int'l Corp.*, 896 F.2d 1112, 1116 n.6 (8th Cir. 1990) (quotation omitted).

## Analysis

Plaintiff filed this motion under Federal Rule of Evidence ("FRE") 702 seeking to exclude portions of Mr. Turner's proposed testimony, arguing: (1) some of his opinions are beyond his expertise; (2) some of his opinions are speculative and unsupported by the record; and (3) he improperly analyzes the credibility of fact witnesses. The Court addresses each of these points below.

### A. Mr. Turner is not qualified under Rule 702 to opine about the consequences of the City's snow removal procedures.

First, Plaintiff challenges Mr. Turner's qualifications to opine about whether the City's snow removal procedures contributed to the damaged propeller. Mr. Turner provided the following opinions on this matter:

> I could not reasonably conclude that a snow berm of a height necessary to make contact with the propellers of N190RL could have been encountered on the landing and rollout of runway three. Although it is possible that a berm of 12 inches in height alongside the edges of runway 1/19 may have existed near the edges of runway 3/21, it is more likely than not that this berm would have decreased in height as soon as it extended into the runway surface of runway 3/21, as no 'pile up' of prior snow would create an obstacle to cause 'piling' of snow up against older snow, as it does along the runway edges. Nearer to the centerline of runway 3/21 it is more likely than not that any berm of snow would only be a few inches in height, as there would be no obstruction to cause the plowed snow to 'stack up,' which is frequently observed alongside a runway that was previously plowed where multiple passes create a higher bank of snow along the runway edges….
>
> Since runway 3/21 had been treated during the day, it is reasonable to expect that any snow berms across this runway would have been removed when the runway was treated. Therefore, the only berms present would be those created by the recent plowing of runway 1/19….
>
> Based on the report from Snow Lead, Melissa Cooper, as well as my experience in observing and working with airport operations personnel during

4

> snow removal events, it is reasonable to conclude that there would have been a three to four inch ridge on the edge of Runway 1/19, where it intersects Runway 3/21….
>
> Nevertheless, I can find no actions on the part of the Kansas City Downtown Airport that contributed to or caused the incident involving N190RL….

Pl.'s Br., Ex. B at 5, 6, 8.

Plaintiff contends that because these conclusions exceed the scope of Mr. Turner's expertise as pilot and experienced air traffic controller, the Court should preclude Mr. Turner from testifying about this subject. In response, the City argues that Mr. Turner possesses the necessary credentials to offer this opinion because during his extensive career as a pilot and air traffic controller he "observ[ed] and work[ed] with airport operations personnel during snow removal events." Def.'s Br. at 3 (quoting Mr. Turner's Opinion, Def.'s Br., Ex. A at 5). The Court finds Defendant's argument unpersuasive.

As its threshold gatekeeping duty under Rule 702, a court must determine whether "knowledge, skill, experience, training, or education" qualifies a proposed expert to opine about a certain subject. *See* Fed. R. Evid. 702. In evaluating an expert's qualifications, a court will not prioritize academic credentials or training over significant experience. *U.S. v. Anderson*, 446 F.3d 870, 875 (8th Cir. 2006). However, the proponent of the testimony must still provide the court with sufficient facts demonstrating the expert's practical experience. *See David E. Watson, P.C. v. U.S.*, 668 F.3d 1008, 1014 (8th Cir. 2012) (holding that the district court did not err in finding a proposed expert qualified to testify on what constitutes reasonable compensation when the defendant demonstrated that the expert had worked on approximately 20 to 30 cases involving reasonable compensation during his tenure with the Internal Revenue Service). And, although a wholesale rejection of expert testimony is rare under Rule 702, *see Robinson v. Geico*

*General Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006), the court must still ensure that an expert witness does not opine on subjects beyond his expertise. *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001). Indeed, a court's failure to properly confine an expert's testimony solely to matters within his expertise may constitute reversible error. *See id.* (holding that the district court abused its discretion in allowing a qualified expert to opine beyond his field of expertise).

Here, Mr. Turner's proposed testimony about the results of Defendant's snow removal procedures exceeds the scope of his demonstrated expertise. At the outset, the Court notes that Mr. Turner's credentials regarding his extensive experience as a pilot and air traffic controller are fairly unassailable. Mr. Turner's *curriculum vitae* ("CV") reveals that he has flown a variety of aircrafts for thousands of hours, he has extensive experience at all levels of air traffic controlling, and he has penned a number of journal articles on these topics. Def.'s Br., Ex. A at 11-16.

His proposed testimony, however, is not solely confined to these topics. Rather, the excerpted testimony concerns whether Defendant's snow removal procedures contributed to the plane's damage. Plaintiff has failed to qualify Mr. Turner as an expert on this subject. Mr. Turner's CV is devoid of any credentials indicating that he has any education, training, or relevant practical experience in snow removal procedures at airports. Likewise, Defendant's responses to Plaintiff's request for admissions demonstrate that Mr. Turner has neither managed a snow removal team at an airport nor has he personally participated in a snow removal process. Pl.'s Br., Ex. F at 3-4.

The only indication that Mr. Turner possesses any prior experience with snow removal procedures at airports comes from his vague statement that he "observed and worked with snow

remove personnel" in the past. Def.'s Br. at 3 (quoting Mr. Turner's Opinion, Def.'s Br., Ex. A at 5). While this statement suggests he has some familiarity with snow removal procedures employed at airports, it does not demonstrate that he is an expert. This passing reference does not indicate in what capacity Mr. Turner worked with snow removal personnel, or how many times he observed snow removal procedures or worked with snow removal personnel. Without more information on these foundational questions, the Court is left to speculate as to Mr. Turner's expertise in snow removal. And, when the Court is required to speculate as to material facts such as these, it is evident that Defendant has failed to carry its burden under Rule 702. In fact in a somewhat analogous case, another court found a proposed expert—who possessed superior or at least similar snow removal credentials as Mr. Turner—unqualified to opine about the propriety of snow removal techniques. *See Spencer v. Wal-Mart Stores E., LP*, 930 A.2d 881, 887-90 (Del. 2007) (holding that the trial court did not abuse its discretion in preventing a proposed expert in snow removal techniques from opining about whether the defendant's actions contributed to the plaintiff's injuries).

Contrary to Defendant's contentions, its failure to present sufficient facts about Mr. Turner's prior experiences does not merely go to the weight of his expected testimony. *See Robinson*, 447 F.3d at 1100 ("Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility."). Nor is the Court merely concluding that Mr. Turner is not the best expert on this topic or lacking a certain type of specialization. *See* Def.'s Br. at 4 (quoting *Robinson*, 447 F.3d at 1101). Rather, these material deficiencies go to the core of admissibility. Quite simply, Defendant has not carried its threshold burden of demonstrating that Mr. Turner's "knowledge, skill, experience, training, or education" qualifies him as an expert in snow removal. *See* Fed. R. Evid. 702. Thus, this portion of

Plaintiff's motion is granted. Defendant shall not elicit testimony from Mr. Turner concerning the topics identified in this section.

### B. Mr. Turner shall not speculate about other potential causes of the damage, but he may testify about the plane potentially veering off the runway.

Plaintiff also moves to exclude Mr. Turner's testimony concerning other potential causes of the propeller damage. Specifically, Plaintiff contends the following two conclusions are unsupported by the facts:

> I could not determine what object [the plane] struck during its movement on the airport operations area during the evening of February 24, 2010….It is reasonable to conclude that a dark object may have gone unseen, such as a small animal, or other debris, causing damage to the aircraft not easily visible from the cockpit….
>
> It is possible the aircraft's right main landing gear left the pavement during a portion of the taxi to Signature Aviation, more likely probable in the area along taxiway "G" parallel to the runway….

Pl.'s Br., Ex. B at 8.

To be admissible, a qualified expert's testimony must be "based on sufficient facts or data." Fed. R. Evid. 702(b). Thus, the court should exclude an expert's proposed testimony when it is either "excessively speculative or unsupported by the sufficient facts." *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 720 (8th Cir. 2012) (internal quotation marks omitted).

Here, Mr. Turner's first conclusion is both excessively speculative and unsupported by the record facts. Despite his assertion that it is "reasonable to conclude" that a "small animal or other debris" caused Plaintiff's damages, Defendant's extensive inspection of the surrounding areas following the incident revealed no such object, and Defendant also admits it is unaware of what precisely struck the propeller. *See* Pl.'s Br., Ex. F at 4-6, 8-11; Pl.'s Br., Ex. G at 1, Pl.'s Br., Ex. H at 5. Without out some facts supporting Mr. Turner's opinion about what "dark object" the propeller struck, it appears that this conclusion is based upon mere conjecture.

Indeed, Mr. Turner's speculative theory is prefaced with the qualifying statement: "I could not determine what object [the plane] struck during its movement on the airport operations area…." Pl.'s Br., Ex. B at 8. Consequently, Defendant shall not elicit testimony from Mr. Turner regarding his conclusion that a "dark object" may have caused the damage.

Although no facts support Mr. Turner's first theory, the same cannot be said for his second theory. Facts and analysis support his conclusion that the plane may have veered off the runway. In his report, Mr. Turner extensively analyzed the Global Positioning System ("GPS") data, which tracked the plane's path during landing. Pl.'s Br., Ex. B at 7. His report also included information about the accuracy of the GPS. Pl.'s Br., Ex. B at 7. Mr. Turner's analysis of the GPS data revealed that the plane came within 22 feet of the pavement line. However, he also noted that the GPS's margin of error in tracking reaches as high as 49 feet. Thus, when the margin of error is factored into the analysis, it is conceivable that the plane may have veered off the runway. Defendant may ultimately rebut this conclusion through cross-examination, but it is not "so fundamentally unsupported that it can offer no assistance to the jury." *Cole v. Homier Distrib. Co., Inc.,* 599 F.3d 856, 865 (8th Cir. 2010) (internal quotation marks omitted).

In its argument, Plaintiff presents some contrary evidence to undermine this conclusion. However, when a proponent establishes the baseline foundation of an opinion under Rule 702, sifting through the contradictory evidence is a task reserved for the jury, not the Court. Accordingly, Plaintiff's motion is denied as it relates to this portion of his proposed testimony.

**C. Mr. Turner shall not comment on the credibility of the witnesses, but he may summarize evidence in his testimony.**

In its final contention, Plaintiff requests the Court exclude portions of Mr. Turner's proposed testimony in which he either explicitly or implicitly bolsters or discounts the credibility of fact witnesses. In particular, Plaintiff suggests that Mr. Turner improperly discounted the

comments of Mr. Hardage and Mr. Wooten while simultaneously bolstering the statements of Defendant's potential witnesses Ms. Cooper, Mr. Koontz, and the Cessna Pilot.

As a general rule, an expert is not allowed to impugn or bolster the credibility of fact witnesses under the guise of rendering his or expert opinion. *Nichols v. Am. Nat. Ins. Co.*, 154 F.3d 875, 883 (8th Cir. 1998). The jury's ultimate duty of weighing the evidence is thwarted when an expert either explicitly or implicitly comments on the credibility of a witness. *See id.* Although an expert may summarize evidence in reaching his conclusion, he may not rely on the comments or allegations of a witness as the sole basis for his opinion. *U.S. v. Whitted*, 11 F.3d 782, 785-86 (8th Cir. 1993).

Portions of Mr. Turner's report clearly discount the credibility of Mr. Hardage and Mr. Wooten:

> Although the pilot of N190RL prepared a written statement regarding the incident, it was prepared approximately four days after the event. During his deposition, he indicated that there were incorrect statements in the written statement, and he made those corrections during the deposition process. When asked how he knew the snow berms he hit on the runway were two and one half to three feet in height, he replied that they had to be over 12 inches to damage the propeller, and that he did not see the snow, but that the pilot-passenger in the right seat observed the snow berms. When asked how he determined the height of two and one half feet to three feet, he indicated that height estimate was based on observed damage to the propellers, not to personal observation of the snow berms. Additionally, the pilot of N190RL indicated that the information of N190RL indicated that the information provided in his statement of February 28, as it pertains to the snow berms, was based on statements made to him by the pilot-passenger seated in the aircraft's right front seat….

> The pilot-passenger seated in the right front seat was deposed. During his deposition, he stated 'touchdown normally, rolled through, I saw a snow berm, we drove through, exited the runway, and found out we had bent the prop.' He was asked what the snow berm appeared like and responded, 'saw a mound of snow, I'm gonna say more than two feet, less than six feet tall, saw it, broke through it, felt the bump.' He indicated it was 'off to the right side.' . . . The witness also testified that he had never flown into an airport in snowing conditions previously, and had not flown into the Kansas City Downtown airport at all….

> Because the pilot in command did not observe such berm, because any berm would not have been perpendicular to the aircrafts ground track, because the passenger had never operated an aircraft in such snowy conditions, and because of the wide range of estimate in the height provided by the passenger, that is, two to six feet, I did not find the passenger's testimony useful to my analysis.

Pl.'s Br., Ex. B at 5-6.

In these passages, Mr. Turner crosses the line from merely summarizing the witness statements into the forbidden territory of commenting on the veracity of their deposition testimony. *See Nichols*, 154 F.3d at 884 (stating a court should not allow expert testimony that is a "thinly veiled comment on a witness' credibility"). Where, as here, the ultimate outcome primarily hinges on the believability of opposing fact witnesses, this type of testimony improperly invades the "the jury's exclusive province to decide witness credibility." *Whitted*, 11 F.3d at 786. Thus, Defendant shall not elicit testimony regarding the veracity of Mr. Hardage and Mr. Wooten's statements.

Similarly, the Court finds that Mr. Turner's comments regarding Ms. Cooper's observations improperly bolster her credibility. In his report Mr. Turner remarked that:

> At no time did [Melissa Cooper] indicate that the berms were a hazard to aircraft operations. Although [Melissa Cooper] could have closed the runway to arriving aircraft, or could have advised of a significant accumulation that might be hazardous to aircraft operations, there is no indication that the snow berms were of a significant height to adversely affect aircraft operations….
>
> …Melissa Cooper, stated that the brooming/plowing…would have created a 3 to 4 inch ridge along both edges of [runway 1]. The report from the [Cessna pilot] provides no information that would contradict this statement….
>
> Based on the report from the Snow Lead, Melissa Cooper, as well as my experience in observing and working with airport operations personnel during snow removal events, it is reasonable to conclude that there would have been a three to four inch ridge on the edge of Runway 1/19, where it intersects Runway 3/21.

Pl.'s Br., Ex. B at 4-5.

When read in combination, these statements implicitly comment on the probative value of Ms. Cooper's statements. Rather than merely reciting her report of three to four inches of snow around the runway, Mr. Turner bolsters her statement through comparing it to her actions and to the testimony of the Cessna Pilot. Such weighing of the evidence is a task reserved for the jury. Moreover, Mr. Turner almost exclusively relies upon her statements of the facts in concluding that the snow berm was only three to four inches tall. Although more subtle than the discounting of Mr. Hardage and Mr. Wooten's testimony, Mr. Turner's adoption of her statement as the primary basis for his expert testimony still crosses the line into improper bolstering. *See Whitted*, 11 F.3d at 786 ("Dr. Likness could not base his diagnosis solely on L.'s allegations of abuse."). Thus, Defendant shall not elicit testimony from Mr. Turner that implicitly or explicitly bolsters Ms. Cooper's statement.

Plaintiff also challenges Mr. Turner's report with respect to statements from Mr. Koontz and the Cessna Pilot. After carefully reviewing the pertinent passage, Pl.'s Br., Ex. B at 4, the Court finds that this portion of Mr. Turner's report merely summarizes Mr. Koontz's and the Cessna Pilot's statements. While Mr. Turner's report does analyze the Cessna Pilot's statements, this narrow inquiry is based upon his expertise in the size difference between the Cessna and the plane. Thus, Plaintiff's motion is denied in so far as it seeks to limit this testimony. However, because this narrow ruling only concerns the testimony's admissibility under Rule 702, the Court reserves the right to exclude this evidence during trial for other evidentiary reasons.

## Conclusion

For the foregoing reasons, Plaintiff's motion (Doc. 69) is GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED.**

Date: February 5, 2014          /s/ Greg Kays
                                GREG KAYS, CHIEF JUDGE
                                UNITED STATES DISTRICT COURT